USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 10, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
:
ROBERT SOFIA, :
:
                                 Plaintiff, :   17 Civ. 1829 (KPF)
:
                   v. :   OPINION AND ORDER
:
GARY ESPOSITO and ADAM M. LEVY, :
ESQ., :
:
                             Defendants. :
:
------------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

      In this case, a failing business relationship culminated in an assault by one former business partner against another outside a courtroom in the United States Bankruptcy Court for the Southern District of New York. Plaintiff Robert Sofia, proceeding *pro se*, claims that Defendant Gary Esposito — Sofia's former business partner in a now-defunct business called Brooklyn Comics & More, Inc. — physically and verbally assaulted him as they left United States Bankruptcy Judge Stuart M. Bernstein's courtroom after a hearing. Sofia further alleges that Defendant Adam Levy, Esposito's counsel at the bankruptcy hearing on the day of the assault, failed to intervene as Esposito spat on Sofia, struck him in the face, grabbed his coat, threw him to the floor, and verbally assaulted him with a racial epithet.

      Pending before the Court is Defendant Levy's unopposed motion to dismiss, which the Court grants for the reasons set forth below.

## BACKGROUND

**A.  Factual Background**[1]

On February 23, 2016, Sofia and Esposito appeared before Judge Bernstein for a bankruptcy hearing involving Brooklyn Comics & More, Inc., which Sofia and Esposito co-owned.  (Am. Compl. 5).  Levy served as Esposito's counsel at the hearing.  (*Id.*).  Sofia alleges that Levy "intentionally stated false information in his applications to the Court in order to generate sympathy for his client and to possibly be appointed by the Bankruptcy Trustee as a 'special prosecutor' to enrich himself."  (*Id.*).

Sofia further alleges that as he, Esposito, and Levy were leaving the courtroom at the conclusion of the hearing, Levy approached him to discuss the possibility of an out-of-court settlement.  (Am. Compl. 5).  As Sofia responded to Levy's question, "Defendant Esposito sp[a]t on [him], hitting [Sofia's] face and glasses."  (*Id.*).  Sofia claims that as he walked away, "Esposito charged after [him], grabbed [his] coat (ripping the zipper), bear-hugged [him] and threw [him] to the floor, called [him] a 'nigger'[,] scratched [his] head with [Esposito's] fingernails removing skin and causing bleeding, and threatened [his] life while stomping on [his] glasses."  (*Id.*).

---

[1]  The facts in this section are drawn from the Amended Complaint ("Am. Compl."), filed on September 29, 2017.  (Dkt. #29).  For the purpose of adjudicating the motion to dismiss, the Court accepts as true the well-pleaded allegations in the Amended Complaint.  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).  For ease of reference, the Court refers to Levy's memorandum of law in support of his motion to dismiss as "Levy Br." (Dkt. #32).  Because the Amended Complaint does not have numbered paragraphs, the Court instead cites to the relevant page numbers.

Though Levy was nearby, he "did nothing to intercede during the several minutes" between when Esposito allegedly spat on Sofia and when Esposito "started beating on" Sofia. (Am. Compl. 5). Sofia "later learned that another attorney intervened by holding Esposito[,] which prevented him from being able to stand up in order to increase the severity of the assault." (*Id.*). The altercation ended when "Federal Marshals arrived and took [ ] Esposito into custody[.]" (*Id.*). Sofia "suffered various injuries, stress, anxiety[,] including debilitating back pain that has only become worse [with] time as a direct result of Esposito's actions." (*Id.*). Sofia "later learned that, somehow, Defendant Levy persuaded the Marshals not to arrest Defendant Esposito and take him to jail." (*Id.*). Sofia concludes by asserting that, "[i]f Levy had not created false documentation to help his client and had let justice prevail, [Sofia] would not have been assaulted on that day." (*Id.* at 6).

**B.   Procedural Background**

On March 10, 2017, Sofia filed a complaint against Esposito and Levy. (Dkt. #2). On September 29, 2017, Sofia filed an Amended Complaint, seeking monetary damages for pain and suffering, as well as a permanent protective order against Esposito and an "official reprimand and other appropriate measures" against Levy. (Am. Compl. 6).

On July 6, 2017, Defendant Levy filed a letter requesting a pre-motion conference (Dkt. #9), which was held on August 9, 2017 (*see* Dkt. #12). Following the pre-motion conference, the Court issued a scheduling order requiring that Levy file his motion to dismiss by October 2, 2017, Sofia file his

3

opposition brief by November 17, 2017, and Levy file his reply by December 4, 2017. (Dkt. #15).

On October 16, 2017, Levy filed the pending motion to dismiss. (Dkt. #31). On November 17, 2017, Sofia failed to file his opposition brief; instead, he requested thirty additional days to oppose Levy's motion, which request the Court granted over Levy's objection. (Dkt. #35). After Sofia failed to file an opposition brief within the extended time period, the Court issued an Order to Show Cause on December 28, 2017, directing Sofia to advise the Court in writing why he had not responded to Levy's motion to dismiss. (Dkt. #39).

On January 26, 2018, Sofia informed the Court that the delay in opposing Levy's motion was caused by unforeseen medical issues. (Dkt. #44). On January 30, 2018, the Court held a teleconference with the parties, during which it instructed Sofia to file his opposition no later than February 15, 2018. (*See* Dkt. #43). On February 13, 2018, Sofia filed a letter advising the Court that he would not oppose Levy's motion to dismiss and that he had "no choice [but] to withdraw Adam M. Levy as a Defendant from this particular case"; he requested, however, that the Court "grant this request without prejudice." (Dkt. #45).

## DISCUSSION

A. **Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine

4

whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 570 (2007)). While this plausibility requirement "is not akin to a probability requirement ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

That said, *pro se* litigants are afforded a special solicitude: A court must construe *pro se* submissions liberally "to raise the strongest arguments that they suggest." *Cruz* v. *Gomez,* 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks and citation omitted). In this regard, a court may also consider factual allegations made in a *pro se* litigant's submissions opposing a motion to dismiss. *See Walker* v. *Schult,* 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). And while a plaintiff's pleadings are typically limited to the complaint itself and any documents "attached to it as an exhibit or any statements or documents incorporated in it by reference[,]" *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (internal quotation marks and citation omitted), a court may also consider documents submitted with a *pro se*

litigant's moving papers, *see Gill* v. *Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (upholding district court's consideration of an affidavit filed by a *pro se* plaintiff in opposition to a motion to dismiss).

**B.     Plaintiff Has Failed to State a Claim Against Defendant Levy**

Sofia's claim against Levy is grounded in the allegation that Levy pulled Sofia aside to speak with him just before Esposito assaulted him, and that during the assault, Levy "did nothing to stop [Esposito]." (Am. Compl. 2). Sofia further alleges that Levy "intentionally stated false information in his applications to the Court in order to generate sympathy for his client and to possibly be appointed by the Bankruptcy Trustee as a 'special prosecutor' to enrich himself." (*Id.* at 5). In Sofia's view, "[i]f Levy had not created false documentation to help his client and had let justice prevail, [Sofia] would not have been assaulted on that day." (*Id.* at 6).

Though Sofia advances specific factual allegations against Levy, he does not clearly connect these allegations to any legal claims or theories under which relief might be granted. In Section A of the form complaint, Sofia asserts that he "was the victim of a physical and verbal assault upon [him] … by Defendant Gary D. Esposito while his attorney, Defendant Adam M. Levy, Esq., did nothing to stop his client." (Am. Compl. 2). He also writes that he "later learned that, somehow, Defendant Levy persuaded the Marshals not to arrest Defendant Esposito[.]" (*Id.* at 5). Yet nowhere in the Amended Complaint does Sofia articulate a specific cause of action against Levy.

6

Nevertheless, in light of Sofia's *pro se* status, the Court construes his allegations to "raise the strongest arguments that they suggest." *Cruz*, 202 F.3d at 597 (internal quotation marks and citation omitted). Accordingly, the Court reads the Amended Complaint as advancing two claims against Levy: a conspiracy claim under 42 U.S.C. § 1985(3), and a negligence claim under New York state law. The Court addresses each in turn.

1. **Plaintiff's Section 1985 Claim Fails**

A conspiracy claim under Section 1985(3) contains four elements: "[i] a conspiracy, [ii] for the purpose of depriving any person … of the equal protection of the laws … , [iii] an act in furtherance of the conspiracy, and [iv] whereby a person is injured in his person or property or deprived of a right or privilege of a citizen." *Iqbal* v. *Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds by Aschroft* v. *Iqbal*, 556 U.S. 662 (2009). To succeed, a plaintiff must also show that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin* v. *Breckenridge*, 403 U.S. 88, 102 (1971). A plaintiff "must [further] provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end[,]" along with "some details of time and place and the alleged effects of the conspiracy." *Romer* v. *Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (internal quotation marks and citations omitted).

While the Court has, in light of Sofia's *pro se* status, liberally construed the Amended Complaint as stating a Section 1985(3) claim, the factual

allegations therein are insufficient to survive Levy's motion to dismiss. To be sure, Sofia has sufficiently alleged that he was injured and that the attack was inspired by racial animus. He claims that, during the assault, Esposito called him a "nigger" (Am. Compl. 5), and that as a result of the altercation, he "[s]ustained cuts, scrapes, bleeding, physical and mental anguish" and is now "afraid to enter a court building [for] fear of being attacked again" (*id.* at 6).

Yet Sofia has not set forth any factual basis to support a claim that Levy and Esposito conspired to achieve the unlawful end. The only evidence suggestive of any such conspiracy — that Levy pulled Sofia aside and distracted him just before the assault and then failed to intervene — does little more than establish "a sheer possibility that [Levy] has acted unlawfully." *Iqbal,* 556 U.S. at 678. Even if true, the fact that Levy distracted Sofia just before Esposito attacked him does not create a plausible inference that Levy and Esposito had entered into an agreement, the aim of which was to harm Sofia. Where, as here, "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Without any factual allegations that support a plausible claim that Levy conspired with Esposito, Sofia's Section 1985(3) claim against Levy cannot survive. *See, e.g., Webb* v. *Goord*, 340 F.3d 105, 111 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any … meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail.").

### 2. Plaintiff's Negligence Claim Fails

Under New York law,[2] a plaintiff must establish the following elements to state a claim for negligence: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack* v. *Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (quoting *Lombard* v. *Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)). "The existence of a duty is thus a *sine qua non* of a negligence claim: In the absence of a duty, as a matter of law, no liability can ensue." *Alfaro* v. *Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (per curiam) (internal quotation marks omitted) (quoting *McCarthy* v. *Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997)). "Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." *Pasternack*, 807 F.3d at 19 (quoting *Darby* v. *Compagnie Nat'l Air Fr.*, 96 N.Y.2d 343, 347 (2001)).

---

[2] The parties do not dispute that New York law governs this action and have not suggested that another jurisdiction's law might apply. Accordingly, this Court need not engage in a choice-of-law analysis. *See, e.g.*, *Arch Ins. Co.* v. *Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues ... presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." (internal quotation marks and citation omitted)); *see also Li & Fung (Trading) Ltd.* v. *Contemporary Streetwear, LLC*, No. 11 Civ. 2022 (CM) (DCF), 2013 WL 3757080, at *5 n.4 (S.D.N.Y. June 6, 2013) ("Plaintiff's [submissions] are entirely silent on the issue of choice of law. Defendants are also silent on the subject. Under the circumstances, it is appropriate for the Court to apply New York law — the law of the forum state — to Plaintiff's state-law claims."). Even if the Court were to engage in a choice-of-law analysis, it would find that New York law applies. Under New York law, where a conflict exists between New York law and that of another jurisdiction, the law of the jurisdiction with the greatest interest in adjudicating the issues raised in the litigation governs. *See, e.g.*, *Babcock* v. *Jackson*, 12 N.Y.2d 473, 480-83 (1963). Here, because the alleged assault took place in New York, Plaintiff resides in New York, and Defendant Esposito resided in New York at the time of the assault, New York has the greatest interest in adjudicating this dispute.

Levy argues that Sofia has failed adequately to plead that Levy owed a duty of care to Sofia. (Levy Br. 4-6). The Court agrees. Under New York law, "[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *Vega* v. *Fox*, 457 F. Supp. 2d 172, 183 (S.D.N.Y. 2006) (quoting *D'Amico* v. *Christie*, 71 N.Y.2d 76, 88 (1987)); *see also Miglino* v. *Bally Total Fitness of Greater N.Y., Inc.*, 937 N.Y.S.2d 63, 71 (2d Dep't 2011) ("Generally speaking, one does not owe a duty to come to the aid of a person in peril, whether the peril is medical or otherwise[.]").

A duty to intervene may exist in exceptional circumstances. As a sister court in this District has explained, "[a] duty may arise … where there is a relationship either between defendant and a third-person tortfeasor that encompasses defendant's actual control of the third person's actions, or between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others." *Vega*, 457 F. Supp. 2d at 183-84 (quoting *Hamilton* v. *Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 233 (2001)). But Sofia has not suggested that Levy had actual control over Esposito at the time of the assault. Nor has he alleged that Levy's relationship with Sofia, such as it was, might have required Levy to protect Sofia. Absent such a relationship, there is no basis to find that Levy owed any duty to intervene during the alleged assault. Without any such duty, Sofia's negligence claim fails as a matter of law.

Even if Sofia had adequately alleged that Levy owed him a duty, his negligence claim would still fail as he has failed to allege causation. Sofia

10

asserts that, "[i]f Levy had not created false documentation to help his client and had let justice prevail, [Sofia] would not have been assaulted on that day." (Am. Compl. 6). But even if true, that conclusory assertion is insufficient to support a negligence claim. Under New York law, a plaintiff must allege "that the negligence was a proximate, or legal, cause of the event that produced the harm sustained by the plaintiff[.]" *Hain* v. *Jamison*, 28 N.Y.3d 524, 529 (2016) (internal citation omitted). When "a question of proximate cause involves an intervening act, liability turns upon whether the intervening act is a *normal or foreseeable consequence* of the situation created by the defendant's negligence." *Id.* (internal quotation marks omitted) (citing *Mazella* v. *Beals*, 27 N.Y.3d 694, 706 (2016); *Derdiarian* v. *Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980)).

Here, there is no question that any harm to Sofia was caused by an intervening act — namely, Esposito's alleged assault. And nothing in Sofia's submissions persuades the Court that the intervening act was reasonably foreseeable. Sofia does not suggest that Levy had reason to believe that Esposito might become violent. This Court cannot find, under New York law, that Esposito's sudden assault of Sofia at the conclusion of the bankruptcy hearing was reasonably foreseeable. *See, e.g., Maysonet* v. *KFC, Nat'l Mgmt. Co.*, 906 F.2d 929, 931 (2d Cir. 1990) (finding that defendant was "not required to anticipate [assailant's] sudden and unexpected act"). Here, Sofia has failed to establish that Levy's actions proximately caused Sofia's injuries, or that the assault on Sofia was reasonably foreseeable under the circumstances. Accordingly, even if Sofia had sufficiently alleged that Levy owed a duty of

11

care — which Sofia has not done — Sofia's negligence claim would still fail as a matter of law.

### 3. The Court Dismisses Sofia's Claims Against Levy With Prejudice

The sole remaining question is whether this Court should dismiss Sofia's claims with prejudice. Rule 15(a)(1) allows a party to "amend its pleading once as a matter of course within … 21 days after serving it, or … if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading[.]" Fed. R. Civ. P. 15(a)(1). But once that period has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further states: "The court should freely give leave when justice so requires." *Id.*

The Second Circuit has explained that "the permissive standard of Rule 15 is consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citations omitted). Accordingly, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block* v. *First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993)).

But Rule 15's permissive standard does not require the Court to dismiss without prejudice a claim that would be futile. The Second Circuit has held that if a complaint has substantive problems and a "better pleading will not

cure [them,]" "[s]uch a futile request to replead should be denied." *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Such is the case here. Sofia has offered the Court no reason to believe that he could cure the deficiencies in his pleadings. The Court is convinced that Sofia would be unable, in any amended pleading, to allege adequately that Levy owed him a duty or proximately caused Sofia's injuries, or that Levy conspired with Esposito to assault Sofia. For that reason, the Court will not permit Sofia to replead his allegations or to withdraw his claims without prejudice.

## CONCLUSION

For the reasons stated above, Defendant Levy's motion to dismiss is GRANTED with prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Court has previously granted Sofia permission to amend his claims against Esposito. (Dkt. #50). As the Court previously indicated, Sofia must file his amended pleadings as to Esposito, if it all, **within 45 days** of the issuance of this Opinion. Esposito will similarly be required to respond **within 45 days** of the filing, by Sofia, of any amended complaint.

SO ORDERED.

Dated: April 10, 2018
New York, New York

*[signature: Katherine Polk Failla]*

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Robert V. Sofia
29 38th Drive
Little Neck, NY 11363
Email: robertvsofia1970@gmail.com

*A copy of this Order was mailed by Chambers to:*

Gary D. Esposito
c/o Michael and Donna DeLepine
1136 East 215 Place
Carson, CA 90745-1602