UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| ROBERT V. SOFIA, | |
|---|---|
| Plaintiff, | |
| -v.- | 17 Civ. 1829 (KPF) |
| GARY D. ESPOSITO, | **OPINION AND ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

     On February 23, 2016, Plaintiff Robert V. Sofia and Defendant Gary D. Esposito, former co-owners of a comic book store, got into a physical altercation inside the U.S. Bankruptcy Courthouse in lower Manhattan. On March 10, 2017, Plaintiff filed a complaint, *pro se*, in this Court alleging assault and asserting federal question jurisdiction as the basis for the Court's jurisdiction. Later, with the assistance of counsel, Plaintiff provided a more specific jurisdictional basis, citing 41 C.F.R. § 102.74-390. Defendant now moves for summary judgment, claiming both that the Court lacks subject matter jurisdiction and that the applicable statute of limitations on Plaintiff's claim has passed. For the reasons set forth in this Opinion, the Court concludes that it lacks subject matter jurisdiction and grants Defendant's motion, dismissing the case without prejudice.

## BACKGROUND[1]

### A. Factual Background

On February 23, 2016, Plaintiff and Defendant appeared at the U.S. Bankruptcy Courthouse at One Bowling Green, in downtown Manhattan, for a hearing regarding their former business, Brooklyn Comics and More, Inc. (SAC 5). Plaintiff alleges that as he was speaking to Defendant's counsel, Defendant spit on him. (*Id.*). Plaintiff told Defendant that his action constituted assault, and then turned away to proceed to the stairway. (*Id.*). At this point, Plaintiff claims, Defendant charged after Plaintiff, grabbed him, threw him to the ground, and scratched him, using a racial slur to refer to Plaintiff. (*Id.*). Plaintiff alleges that he was taken to the hospital by an ambulance after this altercation, and that he has suffered various injuries as a result of it. (*Id.*).

### B. Procedural Background

Plaintiff originally filed this case in New York State Supreme Court on February 17, 2017. (Pl. Decl. ¶ 3). However, on February 21, 2017, the state

---

[1] The facts set forth in this Opinion are drawn from the Second Amended Complaint ("SAC" (Dkt. #55)); Plaintiff's Declaration in Opposition to the Motion for Summary Judgment ("Pl. Decl." (Dkt. #112)); Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Pl. 56.1 Opp." (Dkt. #114)); and the exhibits attached to the Declaration of Michael R. Rhodes ("Rhodes Decl., Ex. [ ]" (Dkt. #105)). For ease of reference, Defendant's opening brief is referred to as "Def. Br." (Dkt. #103), and Plaintiff's opposition brief as "Pl. Opp." (Dkt. #113).

Citations to a party's 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and are denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each

court advised Plaintiff that they did not have jurisdiction and told him that he should try filing in this Court instead. (*Id.*). This Court's Pro Se Intake Office, in turn, referred Plaintiff to the *pro se* clinic run by the New York Legal Assistance Group ("NYLAG"). (*Id.*). NYLAG advised Plaintiff that it would research whether federal jurisdiction existed in this case, and later confirmed to Plaintiff that it did. (*Id.*).

Plaintiff filed his original Complaint, *pro se*, on March 10, 2017, naming as Defendants Gary D. Esposito and the latter's counsel, Adam M. Levy, Esq. (Dkt. #2).[2] In his original Complaint, Plaintiff asserted that federal question jurisdiction was the basis for this Court's subject matter jurisdiction. (Compl. 2). When asked which of his federal constitutional or statutory rights had been violated, Plaintiff alleged, "My right to feel safe inside a Federal Court building because I am the victim of an assault that took place inside Federal Property and have suffered much trauma." (*Id.*).

On August 9, 2017, Plaintiff and Levy appeared for a pre-motion conference regarding Levy's anticipated motion to dismiss. (Dkt. #25 (transcript)). On September 29, 2017, Plaintiff filed his First Amended Complaint (or "FAC"). (Dkt. #28). Plaintiff continued to assert federal question jurisdiction, and in response to the question "[w]hich of your federal

---

statement by the movant or opponent ... controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[2] Plaintiff's original Complaint, and all subsequent complaints, were fillable form complaints. *See, e.g.*, Pro Se Complaint, http://www.nysd.uscourts.gov/sites/default/files/2018-06/Complaint.pdf.

constitutional or federal statutory rights have been violated?," Plaintiff responded, "My right to feel safe and protected on Federal property and inside a Federal Court building, I was the victim of a physical and verbal assault …. This was a hate crime." (FAC 2).

On October 16, 2017, Defendant Levy filed a motion to dismiss. (Dkt. #31). After failing to oppose the motion, Plaintiff wrote to the Court on March 1, 2018, seeking to withdraw his lawsuit against Levy without prejudice. (Dkt. #48). On March 9, 2018, Plaintiff requested leave to amend his First Amended Complaint. (Dkt. #49). The Court granted Plaintiff's request on March 13, 2018. (Dkt. #50). On April 10, 2018, the Court issued an Order and Opinion dismissing Plaintiff's claims against Levy with prejudice. (Dkt. #53).

Meanwhile, Defendant Esposito, *pro se*, answered Plaintiff's First Amended Complaint on March 30, 2018. (Dkt. #51). In consequence, on April 2, 2018, the Court informed Defendant that it had granted Plaintiff leave to amend his First Amended Complaint, and that Defendant would thus be required to respond to that pleading once it was filed. (Dkt. #52). On June 5, 2018, Plaintiff filed his Second Amended Complaint (or "SAC"), which is the operative complaint in this case. (Dkt. #55). Plaintiff again asserted federal question jurisdiction, alleging, "I was the victim of a physical and verbal assault …. This was a hate crime. My right to feel safe and protected on Federal property and inside a Federal Court has been permanently compromised." (SAC 2).

Defendant answered Plaintiff's Second Amended Complaint on June 25, 2018. (Dkt. #58). On July 31, 2018, the parties appeared *pro se* before the Court for a pretrial conference. (Minute Entry of 7/31/2018). On August 2, 2018, the Court granted the parties' respective requests for the appointment of *pro bono* counsel for the limited purpose of assisting with discovery. (Dkt. #64). On October 15, 2018, limited purpose *pro bono* counsel appeared for Defendant. (Dkt. #65). On October 25, 2018, limited purpose *pro bono* counsel appeared for Plaintiff. (Dkt. #66).

On December 18, 2018, the parties appeared with assistance of counsel before the Court for a status conference. (Minute Entry of 12/18/2018). On February 13, 2019, the parties submitted a Case Management Plan to the Court outlining the deadlines for discovery. (Dkt. #74). Additionally, Plaintiff indicated in a joint letter to the Court that he intended to amend his Complaint further. (*Id.*). However, Plaintiff abandoned this course of action in a letter to the Court dated February 20, 2019. (Dkt. #75).

On April 4, 2019, Defendant asked the Court for leave to file a motion for judgment on the pleadings. (Dkt. #82). Additionally, on May 9, 2019, Defendant requested a conference to discuss his motion to compel Plaintiff to provide material facts underlying his claim of subject matter jurisdiction, as requested by Defendant's contention interrogatory. (Dkt. #88). On May 10, 2019, Defendant filed a motion for summary judgment (Dkt. #91), as opposed to the previously requested motion for judgment on the pleadings (Dkt. #82); the Court denied the motion as premature (Dkt. #95).

On May 17, 2019, the parties appeared with their respective counsel before the Court for a pretrial conference. Given the apparent confusion on the point, the Court asked Plaintiff's counsel during the conference about the basis for the Court's subject matter jurisdiction. (*See* Dkt. #97 at 3:12-13). Plaintiff's counsel responded, "[i]t is federal question jurisdiction," and said the claim was based on "Title 41 Federal Code of Regulations Section 102-74.390." (*See id.* at 3:14-15, 4:1-2). Indeed, Plaintiff's counsel informed the Court that the cited regulation was "the only basis" for jurisdiction. (*See id.* at 5:9-12).

On May 20, 2019, the Court ordered Plaintiff to respond to Defendant's contention interrogatory and provide the factual basis for Plaintiff's assertion of subject matter jurisdiction. (Dkt. #96). On June 7, 2019, Plaintiff, with assistance of counsel, responded to Defendant's contention interrogatory that called upon him to "[i]dentify all factual and legal bases to support a finding that this Court has subject matter jurisdiction over this Action." (Rhodes Decl., Ex. 9 at 2). Plaintiff answered that the "physical attack occurred on Federal Property, which is a violation of Title 41, Code of Federal Regulations, Section 102-74.390." (*Id.*). Fact discovery concluded on June 24, 2019 (Dkt. #99), and Plaintiff's counsel terminated her limited representation on July 11, 2019 (Dkt. #101).

On July 24, 2019, Defendant filed a motion for summary judgment along with an accompanying memorandum of law and declaration. (Dkt. #102, 103, 105). On October 10, 2019, Plaintiff filed a declaration opposing Defendant's motion (Dkt. #112), and on October 15, 2019, Plaintiff filed a memorandum of

law opposing Defendant's motion (Dkt. #113). On November 8, 2019, Defendant filed his reply brief. (Dkt. #115).

## DISCUSSION

**A.     Applicable Law**

    **1.     Summary Judgment Under Federal Rule of Civil Procedure 56**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[3] A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. "In assessing the record to determine whether there is a genuine issue to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Gorzynski v.*

---

[3]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) … chang[es] only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refers to "genuine issues of material fact."

*JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246. 252 (2d Cir. 2001). Rather, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

"When considering a dispositive motion made by or against a *pro se* litigant the Court is 'mindful that a *pro se* party's pleadings must be 'liberally construed' in favor of that party and are held to 'less stringent standards than formal pleadings drafted by lawyers.''" *Houston* v. *Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (quoting *Hughes* v. *Rowe*, 449 U.S. 5, 9 (1980)). The Second Circuit has instructed courts to interpret the submissions of a *pro se* litigant "to raise the strongest arguments that they suggest." *See France* v.

8

*Morton*, No. 12 Civ. 5576 (KMK), 2018 WL 1276860, at *8 (E.D.N.Y. Mar. 9, 2018) (quoting *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). "Nonetheless, proceeding *pro se* does not otherwise relieve of a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (internal quotation marks and alterations omitted); *see generally McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154 (2d Cir. 2017).

### 2. Federal Question Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn* v. *Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted) (quoting *Kokkonen* v. *Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)); *accord Platinum-Montaur Life Scis., LLC* v. *Navidea Biopharmaceuticals, Inc.*, — F.3d —, No. 18-3535-cv, 2019 WL 6258632, at *3 (2d Cir. Nov. 25, 2019) (collecting cases). "Individual parties cannot confer subject matter jurisdiction where the Constitution and Congress have not. The absence of such jurisdiction is non-waivable; before deciding any case [the court is] required to assure [itself] that the case is properly within [its] subject matter jurisdiction." *Perpetual Sec., Inc.* v. *Tang*, 290 F.3d 132, 136 (2d Cir. 2002) (internal quotation marks omitted) (citing *Wynn* v. *AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001)); *see also Adames* v. *Taju*, 80 F. Supp. 3d 465, 467 (E.D.N.Y. 2015) ("Where a court lacks subject matter jurisdiction, it must dismiss the complaint in its entirety.").

9

The Constitution empowers federal courts to hear "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties Made, or which shall be made, under their Authority." U.S. Const. art. III, § 2, cl. 1. Furthermore, Congress has granted "the district courts ... original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This is known as federal question jurisdiction, as contrasted with jurisdiction based on diversity of citizenship, *see* 28 U.S.C. § 1332.

"Federal question jurisdiction exists where a well-pleaded complaint 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Tang*, 290 F.3d at 137 (italics omitted) (quoting *Greenberg* v. *Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000)). "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharm. Inc.* v. *Thompson*, 478 U.S. 804, 808 (1986). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

**B.     The Court Lacks Subject Matter Jurisdiction**

Over the lifetime of this action, Plaintiff's specific basis for federal question jurisdiction has shifted dramatically. In the operative complaint, which he filed *pro se*, Plaintiff asserted that the basis for jurisdiction was his

10

"right to feel safe and protected on Federal property." (SAC 2). Then, when Plaintiff had assistance of counsel, Plaintiff asserted to the Court (*see* Dkt. #97 at 3:14-15, 4:1-2), and to Defendant in a contention interrogatory (*see* Rhodes Decl., Ex. 9 at 2), that his basis for jurisdiction was 41 C.F.R. § 102-74.390. Now, for the first time, Plaintiff argues in his briefing that this Court has subject matter jurisdiction because the assault at issue took place in a "federal enclave." (*See* Pl. Opp. 2). As the Court will explain in turn, Plaintiff has failed to raise a triable issue of fact as to any of these asserted bases for subject matter jurisdiction, and therefore the Court must dismiss the complaint.

1. **No Federal Question Is Presented on the Face of the Operative Complaint**

It is a general rule that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Adames*, 80 F. Supp. 3d at 468 (quoting *Beneficial Nat'l Bank* v. *Anderson*, 539 U.S. 1, 12 (2003)). Of course, the Court recognizes that it has an obligation to construe the Second Amended Complaint liberally and interpret it "to rise the strongest argument that [it] suggest[s]," since it was filed *pro se*. *See Triestman*, 470 F.3d at 474 (italics omitted). However, even when according Plaintiff the "special solicitude" he is owed, *see id.* at 475, the Second Amended Complaint cannot be read to raise a federal question.

At its core, Plaintiff's Second Amended Complaint alleges a claim of common-law battery that is non-cognizable under federal law. *Cf. Henderson* v. *Williams*, No. 10 Civ. 1621 (JCH), 2013 WL 1984545, at *3 n.3 (D. Conn.

May 13, 2013) ("[T]here is no federal common law claim for assault or battery."). Plaintiff does plead that he was the victim of a hate crime (*see* SAC 2), which could potentially implicate 18 U.S.C. § 249(a) (prohibiting the willful causing of "bodily injury to any person ... because of the actual or perceived race, color, religion, or national origin of any person"). "However, this law is a criminal statute that cannot be enforced by a private party in a civil action such as this." *Lorenz* v. *Managing Director, St. Luke's Hosp.*, No. 09 Civ. 8898 (DAB) (JCF), 2010 WL 4922267, at *8 (S.D.N.Y. Nov. 5, 2010). Moreover, and as the Court will explain more fully below, there is not enough in this Complaint or the larger record to allow the Court to find that Plaintiff has adequately raised federal enclave jurisdiction. "[W]hether federal enclave jurisdiction ... exists is a complex question," and it cannot be answered simply by observing that the underlying acts took place on federal property. *See Abdi* v. *Brookhaven Science Assocs., LLC*, 447 F. Supp. 2d 221, 227-28 (E.D.N.Y. 2006) (alterations omitted) (refusing to decide whether certain property was a federal enclave when the only evidence offered was a "Deed of Cession" from the State of New York to the United States). A rational fact-finder could not find subject matter jurisdiction on such bare pleadings, even given Plaintiff's *pro se* status, and neither can the Court.

### 2. 41 C.F.R. § 102-74.390 Does Not Provide a Private Right of Action

Although the regulation was not cited in any of Plaintiff's three complaints, Plaintiff and Plaintiff's counsel represented to the Court and to

12

Defendant, through a contention interrogatory, that his asserted basis for jurisdiction was 41 C.F.R. § 102-74.390. (*See* Dkt. #97 at 3:14-15, 4:1-2; Rhodes Decl., Ex. 9 at 2). Section 102-74 is titled, "Facility Management," and Subpart C, wherein the regulation lies, is titled, "Conduct on Federal Property." Section 102-74.390 is titled, "What is the policy concerning disturbances?" It provides:

> All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that —
>
> (a) Creates loud or unusual noise or a nuisance;
>
> (b) Unreasonably obstructs the usual use of entrances, foyers, lobbies…;
>
> (c) Otherwise impedes or disrupts the performance of official duties by Government employees; or
>
> (d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

41 C.F.R. § 102-74.390. Assuming *arguendo* that it may accept this regulation as Plaintiff's basis for federal question jurisdiction, the Court must nonetheless determine whether the regulation suffices as a basis for the Court to exercise its subject matter jurisdiction. Given Plaintiff's *pro se* status, the Court will also set to the side the fact that Plaintiff seems to have abandoned this basis for jurisdiction in his briefing.

A regulation, by itself, may not create a private right of action. *See Alexander* v. *Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by *Congress*." (emphasis added)). In order

to maintain an action pursuant to 28 U.S.C. § 1331, a plaintiff must be able to point to a statute that creates a private right of action. *See Kinneary* v. *City of N.Y.*, 358 F. Supp. 2d 356, 360 (S.D.N.Y. 2005) (dismissing a case for lack of subject matter jurisdiction because the statute relied on did not create any private right of action). "A federal statute may create a private right of action either expressly or, more rarely, by implication. *Republic of Iraq* v. *ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014). Express rights of action are evident from the text of the statute. *See, e.g.,* 15 U.S.C. § 78p(b) (2018) ("Suit to recover such profit may be instituted at law or equity in any court of competent jurisdiction by the issuer."). In order to determine whether a statute creates a private right of action, "the statute in question must evidence congressional intent" to do so. *See Abrahams* v. *MTA Long Island Bus*, 644 F.3d 110, 117 (2d Cir. 2011). "Absent such intent, 'a cause of action does not exist and courts may not create one.'" *Id.* (quoting *Sandoval*, 532 U.S. at 286-87). "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Sandoval*, 532 U.S. at 291.

Following *Sandoval*, the Court must look back to the authorizing statute for § 102-74.390 to determine whether it provides for either an express or implicit private right of action. The relevant statute is 40 U.S.C. § 121 (2018). Section 121(c)(1) provides that "[t]he Administrator [of General Services] may prescribe regulations to carry out this subtitle," and § 121(c)(2) mandates that the Administrator "prescribe regulations that the Administrator considers

14

necessary to carry out the Administrator's functions under this subtitle." Nowhere in the statute does the text provide for an express private right of action. Thus, 40 U.S.C. § 121 must provide an implied private right for Plaintiff to be able to rely on § 102-74.390 for federal question jurisdiction.

In analyzing statutes for the existence of implied rights of action, the Second Circuit looks "first to the text and structure of the statute." *See Republic of Iraq*, 768 F.3d at 170 (quoting *Lindsay* v. *Assoc. of Prof'l Flight Attendants*, 581 F.3d 47, 52 (2d Cir. 2009)). "For a statute to create private rights, its text must be phrased in terms of the persons benefitted." *Gonzaga Univ.* v. *Doe*, 536 U.S. 273, 274 (2002). It is clear from the text and structure of 40 U.S.C. § 121 that Congress had no intention of creating an implied private right of action. With the exception of § 121(b), which discusses the Comptroller General, the statute is focused entirely on the duties and powers of the Administrator of General Services. In no way does the statute discuss the creation of rights for any individual, nor does it speak of "persons benefitted."

As a reference, Defendant helpfully points in his brief to an analogous situation in *Armstrong* v. *Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015). (*See* Def. Br. 11). In that case, the Supreme Court found that § 30(A) of the Medicaid Act did not provide for an implied private right of action because the statute "lack[ed] the sort of rights-creating language needed." *Id.* at 1387. The Act provided "that the 'Secretary shall approve any plan which fulfills the conditions specific in subsection (a),'" which the Supreme Court found was "a directive to the federal agency …, not … a conferral of the right to sue." *See id.*

15

Moreover, the Supreme Court noted that "the explicitly conferred means of enforcing compliance with § 30(A) ... suggests that other means of enforcement are precluded." *Id.* (citing *Sandoval*, 532 U.S. at 290).

Similar to the relevant statute in *Armstrong*, 40 U.S.C. § 121 is framed as a directive to the Administrator, providing the authority by which the Administrator may prescribe regulations or delegate authority, amongst other actions. Furthermore, although the statute itself does not provide an express enforcement mechanism, 41 C.F.R. § 102-74.450 (2005) states, "A person found guilty of violating any rule or regulation in this subpart ... shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both." Plaintiff's proffered regulation thus provides its own enforcement mechanism — criminal penalties — which "suggests that other means of enforcement are precluded." *Armstrong*, 135 S. Ct. at 1387.

As the above analysis makes clear, neither 41 C.F.R. § 102-74.390 nor its authorizing statute creates a private right of action, express or implied. Therefore, there is no genuine dispute as to whether § 102-74.390 can serve as a basis for subject matter jurisdiction. If this is the basis the Court must rely on, the Court has no choice but to dismiss Plaintiff's claim.

### 3. Plaintiff Is Precluded from Relying on Federal Enclave Jurisdiction

In his opposing brief, Plaintiff for the first time asserts that the Court properly has subject matter jurisdiction because the underlying acts occurred in a "federal enclave." (*See* Pl. Opp. 2). The Court cannot opine on whether the U.S. Bankruptcy Courthouse in Manhattan is indeed a federal enclave, as the

16

Court has no evidence to support the site's qualification for that status except that it is owned by the federal government. (*See id.* at 3). The Court need not decide that question, though, as Plaintiff is precluded from advancing this theory at this late stage of the litigation.

Plaintiff is precluded from any reliance on a federal enclave theory of jurisdiction because Plaintiff expressed in a contention interrogatory, while represented by counsel, that his sole basis for jurisdiction was 41 C.F.R. § 102-74.390. (*See* Rhodes Decl., Ex. 9 at 2). Multiple courts in this District and Circuit have recognized that answers to contention interrogatories can bind parties to their answers. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, MDL No. 1358 (SAS), 2014 WL 494522, at *2-3 (S.D.N.Y. Feb. 6, 2014); *Wechsler* v. *Hunt Health Sys., Ltd.*, No. 94 Civ. 8294 (PKL), 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999); *see also Pierre* v. *Hilton Rose Hall Resort & Spa*, No. 14 Civ. 3790 (VMS), 2016 WL 4742281, at *7 (E.D.N.Y. Sept. 12, 2016). This is because contention interrogatories are "designed to assist parties in narrowing and clarifying the disputed issues and reducing the possibility of surprise at trial." *See Wechsler*, 1999 WL 672902, at *1. Because "the answering party is usually afforded ample opportunity fully to reflect on the question, to consult all pertinent sources of information …, and to seek the advice and assistant of counsel in order to craft answers that provide a full and accurate disclosure," *see id.* at *2, "[c]ontention interrogatories are treated as judicial admissions which usually estop the responding party from later

asserting positions not included in its answers," *In re MTBE Prod. Liab. Litig.*, 2014 WL 494522, at *2.

A party can potentially avoid this harsh sanction by making a motion and being heard in court on the matter. *See Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 298 (2d Cir. 2006). No such motion has been made here, though, and therefore Plaintiff's failure to disclose or supplement his answer to the contention interrogatory will result in preclusion unless it can be shown that such failure was "substantially justified or … harmless." *See In re MTBE Prod. Liab. Litig.*, 2014 WL 494522, at *3; Fed. R. Civ. P. 37(c)(1). This is especially the case "when such failure results in prejudice to the adverse party." *See In re MTBE Prod. Liab. Litig.*, 2014 WL 494522, at *3 (citing *Unigene Labs.* v. *Apotex, Inc.*, No. 06 Civ. 5571 (RPP), 2010 WL 2730471, at *6 (S.D.N.Y. July 7, 2010), *aff'd*, 655 F.3d 1352 (Fed. Cir. 2011)).

The Court finds that Plaintiff's previous failures to assert his federal enclave theory, either in his original answer to the contention interrogatory or as a supplement, were neither substantially justified nor harmless. While it is true that prior to and following discovery Plaintiff has proceeded *pro se*, there is no dispute that Plaintiff was represented by competent counsel throughout the discovery process, including when Plaintiff responded to the contention interrogatory. (*See* Pl. 56.1 Opp. ¶¶ 19-21). Plaintiff cannot escape the consequences of his actions while counseled simply due to the termination of that representation.

What is more, Plaintiff's failure to disclose this theory is far from harmless.  As previously mentioned, "whether federal enclave jurisdiction … exists is a complex question," *see Abdi*, 447 F. Supp. 2d at 227, requiring an analysis of the manner in which the federal government holds the land (i.e., leaseholder versus owner), when the federal government took ownership of the land, and whether the State gave its consent to the federal government's acquisition and assertion of exclusive jurisdiction, *see Paul* v. *United States*, 371 U.S. 245, 264-65 (1963).  Defendant would need considerably more time and discovery in order to begin addressing this theory properly, despite the fact that it has been nine months since the commencement of discovery, five months since its completion, and four months since Defendant filed his motion for summary judgment.  Indeed, even if Plaintiff's theory were not precluded, the Court does not have the record necessary to find that Plaintiff had raised a genuine dispute as to jurisdiction.  To allow Plaintiff to assert this novel theory this late in the game, after Plaintiff had the assistance of counsel for the entirety of discovery, would be to render Rule 37(c)(1) toothless.  The Court cannot accept Plaintiff's theory of federal enclave jurisdiction.

In sum, the Court finds that Plaintiff has failed to raise a triable issue as to whether this Court properly has subject matter jurisdiction over this litigation, and the matter must be dismissed pursuant to Rule 12(b)(1).  Given this resolution, the Court does not consider Defendant's further argument that Plaintiff's claim is barred by the statute of limitations.  *See Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent authority

19

to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (observing that dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions").

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion for summary judgment is GRANTED. Furthermore, Plaintiff's case is DISMISSED WITHOUT PREJUDICE as to the underlying merits of his claim. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: December 4, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

Robert V. Sofia
29 38th Drive
Little Neck, NY 11363